IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM FARRELL RUSSELL,** ) | |
| ) | |
| Movant, ) | |
| ) | No. 1:23-cv-01069-STA-jay |
| v. ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On April 25, 2023, Petitioner William Farrell Russell filed a *pro se* motion to vacate, set aside, or correct his sentence (the "§ 2255 Motion") pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Russell, Bureau of Prisons register number 29767-076, is an inmate in federal custody who is currently housed at FCI Petersburg Medium in Hopewell, Virginia. The United States of America has responded in opposition to Russell's § 2255 Motion. Russell did not choose to file a reply, and the time to do so has now expired. For the reasons set forth below, the Court **DENIES** the § 2255 Motion.

## BACKGROUND

On August 15, 2016, a grand jury returned an indictment (no. 1:16-cr-10082, ECF No. 13), charging Russell with child pornography offenses. After the grand jury later returned a superseding indictment and then a second superseding indictment, Russell proceeded to trial on two charges: distributing a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) (Count 1), and possessing a visual depiction of a minor engaged

in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 2).  On September 16, 2020, a jury found Russell guilty on both counts.  On May 19, 2021, the Court sentenced Russell to 240 months in prison on Count 1 and 22 months on Count 2, to run consecutively, for a total term of 262 months in prison, to be followed by supervision for life.  Judgment (No. 1:16-10082-STA, ECF No. 234).  Russell appealed.  On January 24, 2022, the United States Court of Appeals for the Sixth Circuit affirmed.  *United States v. Russell*, No. 21-5519, 2022 WL 203330 (6th Cir. Jan. 24, 2022).  The Court of Appeals issued its mandate on February 15, 2022, and Russell did not seek certiorari at the United States Supreme Court.

On September 19, 2022, Russell filed a *pro se* motion for jail credits (ECF No. 243), which the Court denied in a written order on September 28, 2022.

On April 25, 2023, Russell filed his § 2255 Motion, in which he raised a single claim: that one of his trial attorneys, William Massey, Esq., had received a plea offer on Russell's behalf from the government and failed to communicate the offer to Russell or advise Russell about the terms of the offer.  Russell alleges that Massey's failure to relay the offer or meet with Russell to explain the terms of the offer constituted ineffective assistance of counsel.

The government filed its response (ECF No. 8) on June 6, 2024.  As part of its response, the United States provided an affidavit from Mr. Massey as well as one of the attorneys who later represented Russell during the pretrial phase of his case, Dianne Smothers.  Mr. Massey's affidavit details the nature of the charges against Russell and the proof developed by the investigation into Russell's online activities related to child pornography.  Mr. Massey took a number of steps to assist Russell in preparing his defense.  He gathered discovery material, had recorded interviews between Russell and law enforcement transcribed, identified damaging or incriminating evidence against Russell, and ultimately advised Russell to consider plea bargaining and then fighting for a

more favorable sentence.  Mr. Massey then describes each of the six attorney-client meetings he had with Russell and included copies of Mr. Massey's handwritten notes documenting the meetings.

Concerning the plea negotiations, Mr. Massey states that he met with the Assistant United States Attorney and negotiated a plea bargain on Russell's behalf.  But when Mr. Massey attempted to present the written plea agreement to Russell, Russell refused to discuss the matter and faulted Mr. Massey for not taking direction from Russell.  Mr. Massey later attempted to hand-deliver the plea agreement to Russell during a report date before the Court.  Russell again refused to consider the plea agreement.  Mr. Massey eventually mailed Russell a copy of the plea agreement along with a detailed letter explaining the strengths and weaknesses of the case.  A short time after that, Mr. Massey withdrew as Russell's attorney based on his view that the attorney-client relationship had deteriorated and the fact that Russell's sister Tammi Russell had told her brother in an email that she wanted to harm Mr. Massey.[1]

## **STANDARD OF REVIEW**

A petitioner seeking § 2255 relief "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (citation omitted).  A movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020).  "[C]onclusory allegations alone, without supporting factual

---

[1] Mr. Massey also describes the involvement of Russell's sister, Tammi Russell.  After Russell provided written authorization for Mr. Massey to discuss his case with his sister, Mr. Massey met with Ms. Russell, took phone calls from her, exchanged text messages, and corresponded with her.  In one letter addressed to Ms. Russell, Mr. Massey also described the plea agreement and attached a copy of the written agreement.

averments, are insufficient to state a valid claim under § 2255." *Gabrion*, 43 F.4th at 578 (citation omitted)).

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. am. VI. The right to counsel includes "the right to the effective assistance of counsel." *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The Supreme Court has described the right to effective assistance of counsel as "a bedrock principle" and the "foundation for our adversary system" of criminal justice. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding." *Gilbert v. United States*, 64 F.4th 763, 770 (6th Cir. 2023) (quoting *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019)). A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is cognizable under § 2255. *Gilbert*, 64 F.4th at 770 (citing *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to carry his burden and show that he was deprived of his right to counsel, Russell "must show deficient performance by counsel and resulting prejudice to the defendant." *Griffin*, 330 F.3d at 736 (citing *Strickland*, 466 U.S. at 687, 694). First, to demonstrate deficient performance, Russell "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

4

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

Then, to demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted).  Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Section 2255 indicates: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]" 28 U.S.C. § 2255(b); *see also* Rules Governing § 2255 Proceedings, Rule 4(b).  The Sixth Circuit has "interpreted this statutory language (and the accompanying procedural rules) to require a hearing only if a prisoner meets a standard analogous to the summary-judgment test by creating a legitimate dispute over a legally important fact." *Wallace v. United States*, 43 F.4th 595, 606–07 (6th Cir. 2022) (citations omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914

5

F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## ANALYSIS

### I. Timeliness of the § 2255 Motion

As a threshold matter, the government argues that Russell filed his § 2255 Motion outside of the one-year statute of limitations. Under 28 U.S.C. § 2255(f), "[a] 1-year period of limitation shall apply to a motion under this section." § 2255(f). Generally speaking, the § 2255 limitations period begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The government contends that the criminal judgment against Russell became final on February 15, 2022, the date on which the Sixth Circuit issued its mandate following its decision to affirm Russell's judgment of conviction on direct appeal. But the government's position is not well supported and is contrary to existing Supreme Court authority.

"When, as here, the U.S. Court of Appeals affirmed a criminal judgment, but the defendant did not file a petition for a writ of certiorari with the Supreme Court, his judgment is deemed to be final when the time for filing such a petition expired (i.e., 90 days after the U.S. Court of Appeals entered judgment)." *Cradler v. United States*, 891 F.3d 659, 665 (6th Cir. 2018) (citing *Clay v. United States*, 537 U.S. 522, 525, 527 (2003)). In this case, Russell had 90 days from January 24, 2022, the date of the Sixth Circuit decision in his direct appeal, to file a petition for certiorari with the Supreme Court, making the petition due no later April 25, 2022. Russell did not seek certiorari at the Supreme Court. Russell then had one year from April 25, 2022, in which to file his § 2255 Motion. Russell filed his § 2255 Motion on April 25, 2023, the final day of the limitations period. Therefore, Russell's § 2255 Motion is timely.

**II. Ground 1 – Ineffective Assistance of Counsel for Failure to Communicate Plea Offer**

Russell alleges in Ground 1 that his trial attorney Mr. Massey received a plea offer from the United States but failed to communicate the offer to Russell or advise him about the merits of the offer. "[W]hen the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process." *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018) (citing *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)). Ineffective assistance of counsel claims in the context of plea bargaining take different forms. Where a defendant like Russell claims his attorney never advised him about an actual offer from the government, "a lawyer's deficient performance might lead a defendant to *stand trial* rather than *accept a plea offer*." *Carson v. United States*, 88 F.4th 633, 639–40 (6th Cir. 2023) (citing *Lafler*, 566 U.S. at 162–64). More specifically, "[c]ounsel might wrongly fail to convey the prosecution's offer to a client." *Id*. at 640 (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). In cases of that sort, the defendant must show a "reasonable probability" that (1) he "would have accepted the offer but for counsel's deficiency," (2) the court would have approved of the plea deal, and (3) the deal would have led to a "less severe" outcome for the client than the outcome that resulted from the trial. *Id.* (citing *Lafler*, 566 U.S. at 164).

Russell has failed to carry his burden to show that Mr. Massey was ineffective. First and foremost, the record flatly contradicts Russell's allegation that Mr. Massey "did not advise me of the offer" or help Russell "learn the details of the offer." § 2255 Motion 4 (ECF No. 1). Other than this single conclusory statement, Russell has offered nothing to support his allegation. By contrast, through Mr. Massey's declaration and the accompanying exhibits, the government has shown that Mr. Massey explained the charges, the proof, and the serious sentencing exposure in Russell's case at several times during his representation. The record shows that Russell wrote to

the Court in June 2017 (No. 1:16-10082-STA, ECF No. 54), stating that the government had made a plea offer in May 2017 and that Russell was waiting to meet with Mr. Massey to discuss it. Russell's own letter to the Court shows that Russell received the proposed plea bargain. Mr. Massey also wrote to Russell's sister, at her request and with the express written approval of Russell, and provided her with a copy of the proposed plea agreement in a letter dated May 25, 2017. *See* Massey Ltr. 6, May 25, 2017 (ECF No. 8-3, Page ID 108). After that, Mr. Massey wrote to Russell on June 4, 2017, and included in his correspondence a copy of the letter addressed to Russell's sister along with the plea agreement. To the extent that Russell alleges Mr. Massey "did not advise" him the government had made the offer at all or help him "learn the details of the offer," Russell's allegation contradicts other record evidence and therefore must be rejected.

Russell goes on to allege that Mr. Massey "refused to see me at the jail" and implied that Mr. Massey did not take phone calls from Russell. § 2255 Motion 4 (ECF No. 1). But the government has introduced unrebutted proof from Mr. Massey that he met or attempted to meet with Russell at the West Tennessee Detention Facility six different times to discuss his case, including the government's plea offer. In fact, Mr. Massey's affidavit paints a picture of what can only be described as a difficult relationship with Russell, one in which Russell used obscenities and other abusive language with counsel. Mr. Massey came to form the opinion that Russell "did not want to take a plea but he did not want a trial yet either." Massey Aff. ¶ 13. In other words, Russell "engaged in delay tactics and attempted to justify it by blaming his lawyer." *Id*. Having come to that conclusion, Mr. Massey decided to require that all communication with Mr. Russell and his sister Tammi Russell needed to be in writing. *Id*.

According to Mr. Massey, he met with the Assistant United States Attorney on May 10, 2017, to finalize a plea agreement. Massey Aff. ¶ 12(k). Mr. Massey and another attorney from

8

his firm attempted to meet with Russell about his case on May 11, 2017, but were told Russell refused to meet with them.  *Id.* ¶ 12(l).  At a report date on May 12, 2017, Mr. Massey informed the Court with Russell present in the courtroom that he had received a plea offer from the United States and needed time to review it with Russell.  *Id.* ¶ 12(n).  Mr. Massey avers that he attempted to give Russell a copy of the plea agreement at the report date.  *Id*. ¶ 12(n)(1).  Russell refused to accept the copy from Mr. Massey and became so disruptive during the report date that the Court ultimately directed the Deputy U.S. Marshal to remove Russell from the courtroom.

In Mr. Massey's view, the plea agreement would have resulted in an offense level of 31 on the child pornography distribution charged in Count 1 and a guidelines sentencing range of 108 months to 135 months (assuming a criminal history category of I).  *Id.* ¶12(n)(2).  Mr. Massey explained his position on the proposed plea agreement and the risks of proceeding to trial in his May 25, 2017, letter to Russell's sister as well as in the follow-up letter he wrote Russell on June 4, 2017.  Mr. Massey has also affirmed that he and one of the lawyers in his firm met with Russell on June 21, 2017.  Massey Aff. ¶ 12(a)(5).  During this conference, Russell refused to go over the plea agreement and called Mr. Massey "a Southern piece of shit" as well as other hostile and derogatory names.  *Id*.  In a letter dated June 22, 2017, Russell wrote to Mr. Massey that he wanted to have a "part of putting together a Plea Agreement." *Id.* ¶ 12(v).

Mr. Massey filed a motion to withdraw as Russell's attorney of record on June 26, 2017, citing Russell's verbally abusive conduct and an email from Russell's sister addressed to Russell in which Russell's sister made threats against Mr. Massey.  Mot. to Withdraw June 26, 2017 (no. 1:16-10082-STA, ECF No. 51).  The United States Magistrate Judge granted Mr. Massey's request on July 5, 2017.

This detailed and unrefuted evidence completely contradicts Russell's conclusory allegation that Mr. Massey refused to meet with Russell to discuss the plea agreement. And Russell has not shown why an evidentiary hearing is necessary to decide the issue. "When a defendant presents an affidavit concerning a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the defendant is entitled to an evidentiary hearing." *Villa v. United States*, 56 F.4th 417, 420 (6th Cir. 2023) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). Russell has not presented an affidavit with his narrative of events, much less one that is not contradicted by the record, meaning no evidentiary hearing is needed to decide his claim. The Court concludes that Russell has failed to show that Mr. Massey's representation during the plea-bargaining phase was deficient.

Moreover, Russell has not shown that any supposed ineffectiveness on Mr. Massey's part caused him any prejudice. In order to prove prejudice in the context of plea negotiations, the defendant must show "a reasonable probability that, with proper advice, the outcome of those negotiations would have been different." *Rodriguez-Penton*, 905 F.3d at 489–90. Even if Russell could prove (and he has not) that Mr. Massey did not fully and completely advise Russell about the government's plea offer, the undisputed record evidence shows the plea bargain remained available after Mr. Massey's withdrawal and that even with new counsel, Russell adamantly refused to accept the government's offer.

The Office of the Federal Public Defender was appointed to represent Russell for all further proceedings after Mr. Massey's withdrawal. The United States has provided an affidavit from Assistant Federal Public Defender Dianne Smothers, Esq. (ECF No. 8-6), who represented Defendant from August 11, 2017, through November 25, 2019. According to Ms. Smothers, the

Assistant United States Attorney advised her after she came onto the case that the government had previously made a plea offer to Russell and communicated the offer through Mr. Massey. Smothers Aff. ¶ 21. After learning about the plea offer for the first time, Ms. Smothers wrote letters to Russell, one in June 2019 and the other in July 2019, stating that the government was extending the same plea offer. *Id*. ¶ 22.

A third letter addressed to Russell from Ms. Smothers and dated July 12, 2019, set out in detail the terms of the proposed plea deal and Ms. Smothers' opinion that the deal if accepted would result in a sentence of 108 months to 135 months. *Id*. ¶ 23. Ms. Smothers advised Russell that the offer was good through July 26, 2019. *Id*. ¶ 25. When Ms. Smothers and an investigator from the FPD met with Russell on July 23, 2019, to discuss Russell's case and the government's proposal, Russell brought Ms. Smothers' July 12, 2019, letter with him, and demanded to know why she had sent it to him. *Id*. ¶ 26. Russell expressed anger with Mr. Massey and his view that he had never authorized Mr. Massey to engage in plea negotiations. *Id*. Russell rejected the plea bargain, stated his refusal to plead to any charge, and told Ms. Smothers he was going to trial. *Id*. The upshot of the proof is that even after Mr. Massey's withdrawal, Russell had a full and complete opportunity to discuss the same plea agreement with Ms. Smothers and elected not to accept it. Russell has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under the circumstances, Russell has not met his burden to prove that any supposed ineffectiveness on Mr. Massey's part prejudiced Russell during the plea-bargaining process. Therefore, Russell's § 2255 Motion is **DENIED**.

### III. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted); *see Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005). In this case, for the reasons previously stated, Russell's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. Therefore, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides

that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[2]

    **IT IS SO ORDERED**.

                                            s/ S. Thomas Anderson
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE

                                            Date:  August 29, 2024.

---

[2] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.